DETERMINED IN THE

# Supreme Court of Judicature,

OF THE

# STATE OF NEW JERSEY,

AT SEPTEMBER TERM, 1828.

---

ISAAC H. WILLIAMSON, ORDINARY, &c., *against* RICHARD SNOOK, THOMAS STOUT and NEAL HART.

## IN DEBT.

In an action on an administration bond, the judgment must be rendered for the penalty of the bond, and a court of law cannot assess damages upon it.

The only way the defendant can obtain relief against the payment of the penalty, is by applying to the ordinary for a stay of execution, or stay of sale, or such reasonable further time as may enable him to settle the estate in the Orphans' Court, in satisfaction of the bond and judgment.

---

*Wm. Halsted* for the plaintiff.

*Saxton* for the defendant.

The facts in this case sufficiently appear in the opinion of the court, which was delivered by Justice *Ford.*

Ordinary *v.* Hart.

FORD, J. This action is brought on the penalty of an administration bond, dated the 24th of January, 1824, against Richard Snook, administrator of Nathaniel Snook, deceased, and two other defendants, who are his securities. When the cause came on for trial, upon breaches assigned, the parties agreed on a case to the following effect: 1. That the bond was duly executed and delivered. 2. That on the 24th of May, 1824, the administrator filed an inventory, amounting, by appraisement, to $107.13. 3. That he hath made no account of his administration, but therein has wholly failed. 4. That the person upon whose petition the ordinary allowed the bond to be put in suit, is a judgment creditor to the amount of $28.63; beside whom, there are other creditors to the amount of $65.37 or upwards. 5. That the estate, which came to the possession of the administrator, amounted to the sum of $112. 6. It is agreed that judgment be entered for the penalty of the bond, with or without damages, on occasion of the breaches, as the court shall deem lawful; *or* for the amount of the debt owing to the creditor on whose application the bond is prosecuted; *or* for the amount of the assets that came to the hands of the administrator; as the court may think ought to be done.

After an adjudication of this court, in case of the *Ordinary* v. *Robinson*, 1 *Halst.* 195, that no assessment of damages on an *administration* bond, could be made *at law*, it is not a little surprising, that *various projects*, for making one, should be presented in the state of this case.

The opinion in 1 *Halst.* was formed after two arguments, by learned counsel, and upon a deliberate examination of every case and *dictum.* It appeared that every effort, through a series of years, to obtain an assessment at law upon an administration bond, had uniformly failed. The obstacles to it were insurmountable, and no precedent of such an assessment was to be found in the books. Though the expedient of assigning for breach, the non-payment of a debt owing to a particular creditor, had been repeatedly

overruled; one of the judges of this court, at length came into it, and prevented the opinion in Robinson's case from being unanimous. If that expedient be now relinquished, (and it seems at present not to have a single advocate,) the opinion in 1 *Halst.* may be considered an unanimous one against an assessment; and that all we can do *at law* is, to give judgment for the penalty. Such was the opinion of the court in that case; and I am bold to say there never was a case, upon argument, in which this, or any court of law, went further.

But having myself been a concurring member of the bench, when that decision was made, it would not become me to repose silently on its authority; I shall therefore endeavor to demonstrate: that the assessment of damages, on an administration bond, belongs by statute to the Prerogative Court only; that there is nothing in law or reason to prevent it from being done there; and that a court of common law does not possess the *means* of assessing damages on *such* bonds.

*First.* The assessment of damages, on *administration bonds,* appertains by statute to the Prerogative Court. The 11*th section* of the *act, Rev. Laws* 177, prescribes the condition of these bonds; and it is the same in substance with that prescribed by 22 and 23, *Car.* 2. The 12th *section* is in these words; " and in case any such bonds shall become forfeited, it shall be lawful for the ordinary or surrogate general, to cause the same to be prosecuted in any court of record, at the request of any party grieved by such forfeiture; and the moneys recovered upon such bond shall be *applied* towards making *good the damages sustained* by the not performing the said condition, *in such manner* as the judge of the Prerogative Court shall, *by his sentence or decree,* direct." It will be conceded that the statute means, by the word " *applied,*" that the moneys recovered shall be *paid* towards making good the damages in such manner as the Prerogative Court shall direct. Before the ordinary can fulfil this

direction, he must ascertain the persons injured, and the amount of each one's damages, or he will never know when he has made them good. If this court possessed the means of ascertaining the persons and the amount of each one's damages, still it could not lawfully *use* those means, because the statute directs it to be done by a *sentence or decree* of the Prerogative Court. Those injured, by non-performance of the condition, will be creditors of the intestate, and the *next of kin;* the creditors according to the amounts of their respective debts, when liquidated; and the *next of kin,* according to the *surplus* that may be remaining for them after the debts are satisfied. The *manner* of ascertaining these sufferers, and of making good their respective damages, is to be *such* as the ordinary shall by his sentence direct. He will direct the administrator to settle the whole estate forthwith, in the Orphans' Court of the county, giving notice, by advertisement, to creditors to present their demands; and to the *next of kin* to see that he is charged with the whole estate that came to his hands, or has been lost through his neglect. Without this or some similar *manner to be by him directed,* there is no intelligence, short of inspiration, that can tell the amount of damages which *he is to make good* out of this bond. He must, by the most necessary implication, have power to ascertain the sufferers and their respective damages, or he can never know when he has peformed his duty. It would therefore be flying in the face of this act, to attempt to take the duty out of his hands. To call a host of creditors into court, and liquidate their individual demands, so as to ascertain each one's damages under this bond is a high *judicial* proceeding, worthy of that dignified court; and it would be a notable misconstruction to take all that power into the hands of this court, (which is not so much as named in the act,) and leave to the Prerogative Court no more than the *low ministerial* office, of handing over money to certain persons mentioned in *our decree,* a form of which would have to be devised.

*Secondly*. There is nothing in law or reason to prevent this assessment·from going to the ordinary. The idea that· a court of *law* is bound, in this case, to assess damages under the act concerning obligations, *Rev. Laws* 305, *sec.* 5,. is entirely new. That act provides indeed, that in every action upon any bond, with condition other than for the payment of money, the plaintiff shall assign breaches, and the jury shall assess damages upon such as the plaintiff shall prove to have been broken; but those provisions are not, and never have been held applicable to *administration bonds* for a variety of reasons. First. The Prerogative Court is appointed to ascertain who have been injured, and to *make· good* their damages by reason of the breach of the condition; and it cannot for a moment be admitted that there are to be *double* assessments, one here and one in that court. Secondly. A court of *law* does not possess the *means* of assessing damages on these bonds, as I shall presently shew; and it is for this reason that the power of doing it is vested elsewhere by statute. Thirdly. Damages on an administration bond, regard the *non execution of a trust,* the performance of which is to be *specifically enforced* in another court,. and ought not to be obstructed by substituting definite· damages in lieu and bar of that performance. Fourthly. The *statute* 8 and 9 *Wil.* 3 *ch. ss. sec.* 3, contains a provision,. concerning obligations, exactly the same as our act which is a copy of it; yet that statute was never held applicable to· administration bonds; nor can a case be found where assessments have been made upon them at law. We must suppose the courts of Westminster profoundly stupid to have overlooked this statute ever since the·9 of· *Wil.* 3, or else; too learned ever to have supposed it applicable to these· bonds.

There is as little ground for another idea, that if judgment is given, without an assessment, the administrator will have to raise the whole penalty, and deposit it as security in the Prerogative Court, before the ordinary will relieve·

against it. Now there is no such rule in the Prerogative Court. The idea is borrowed from *Rev. Laws* 704, *sec.* 6; which makes it a rule of the *Court of Chancery only*, and that too only upon an *injunction*, and where the merits are to be contested in a dispute between *third persons*. It has no relation to the Prerogative Court; and is confined entirely to cases of injunction. Here the ordinary is plaintiff in the cause. Must he grant an injunction against himself, to stay himself, in his own suit, until he allows the administrator sufficient time to settle the estate in the Orphans' Court? I do not think this objection needs further notice.

One motive assigned, for an assessment at law, on this particular bond, arises from an unaccountable and outrageous disproportion, supposed to exist between $112, the amount of the estate, and the enormous penalty of $2000. I shall presently shew that the sum of $112, inserted in this case, ought to be rejected, as not being a fact within the issue, and altogether extrajudicial. But suppose it to be ever so outrageous, it is the penalty under which Mr. Snook voluntarily accepted the administration of the estate, and if he did not object to it then, he ought not to be allowed to do it now, after he has broken the bond.

Are we, in this collateral way, to correct a penalty, lying exclusively within the *legal discretion* of the ordinary and his surrogates? Or will the ordinary be less willing to assess *reasonable* damages because the penalty is unreasonable? be it greater or less, he will hold it only *as a security to compel this defaulting officer to settle the estate promptly in the Orphans' Court* After all, it cannot be pretended that damages *are* to be assessed at law on these bonds, if the penalties are outrageous, but *not* to be assessed if the penalties are only *double*. They must all stand upon one rule.

Having shewn that the ordinary is appointed by statute, to *make good* to all persons the *damages sustained* by occasion of the breach of the condition of an administration bond, and that he must have the whole penalty *if he should*

*find it necessary for these purposes.* I shall next shew that
this court does not possess the *means* of making an assess-
ment on these bonds, and that this is the true reason why
the statute has appointed it to be done elsewhere.

It is easily to talk about assessments on these bonds. It
has been talked about by the wisest judges for more than
150 years, (ever since the statute, 23 *Car.* 2) but without
having been effected in a single instance. The doctrine
during that time, has stood established. To those who are
not fond of putting fixed principles afloat for the introduc-
tion of judicial novelties, one would suppose this argument
enough of itself. But if a precedent is now for the first
time to be made, the principles of it ought to be clearly
settled. The bond being a security for *creditors*, and *next
of kin*, the principles ought to be cautiously, adopted; lest
by liquidating damages too high we do an irreparable injury
to the administrator; or by setting them too low, we do an
irreparable injury to the creditors and next of kind. The
ordinary, upon a petition presented to him in the Preroga-
tive Court, would take undeniably the most *certain* course.
He would order the administrator to do, what he ought to
have done long ago, to advertise and settle the estate
promptly in the Orphans' Court. There the creditors (who
are totally unknown to this court) would have notice to pro-
duce their demands, and leave to unite with the next of kin,
as parties, in bringing the whole estate to light, and in
checking the administrator's accounts. When the debts
were liquidated, and paid, and the surplus was paid over to
the next of kin, then "*all the damages sustained by not
performing the condition of the bond would be made good,*"
and the ordinary would release the penalty or security.
But if we assess the damages, it will necessarily preclude
him from referring it to the Orphans' Court, inasmuch as
there cannot be *two* assessments on the same bond. What-
ever damages the verdict of a jury shall give to him, as
plaintiff in the action, he will take; but he will be justly

cautious of taking *more* than the verdict and judgment measured out to him. Indeed he could take no more; he would be debarred of more, under the 7th section of the act, *Rev. Laws* 306; for the administrator, upon payment of the *damages assessed,* would be entitled to have the judgment against himself and his securities discharged.

Now the only modes of assessing damages, at law, that have ever been suggested, are *two;* one is, that old and exploded mode, so uniformly rejected in Westminster Hall, but to which one of the judges inclined, in the case of the *Ordinary* v. *Robinson,* of giving the amount of the debt owing to the particular creditor, who got liberty to prosecute the bond; not considering that there can be but one assessment on a bond, (unless for breaches that *happen afterwards, Rev. Laws* 306, *sec.* 7,) and therefore that the remedy for other creditors and next of kin, would be done away forever. But I forbear multiplying objections which would fairly lie against this mode of assignment, because I do not find now, an advocate for it left.

But a substitute is now devised, and it truly may be called *new,* as it is not to be found in any book, nor has been warranted by any judicial decision in the course of a century and a half, since the statute first prescribed the condition of these bonds. It is, to assess damages, to the whole amount of the intestate's estate, without any allowance for payments made to creditors, though the administrator shall have fairly paid out half, or two-thirds, or even more, of all the estate that ever came to his hands. It assumes, gratuitously, that this court can ascertain the whole estate, in a simple action *on the bond,* in the absence of all the *creditors* and next of *kin,* who knew anything of it, and who, though deeply interested, are no parties to the suit, nor have so much as notice of the action. It may be said that the amount, *in this cause,* is already ascertained in the state of the case; that the estate amounted to just $112. Now, the practice of the surrogate-general, and of all his surrogates, is to take the penalty of

the bond, as nearly as may be in double the amount of the estate, and as this is taken in the penalty of $2000, a question naturally arises how the parties got the estate reduced so low as the miserable sum of $112. I do not mean to impute to these parties any unfair practices; it would be highly ungenerous to do so in a case where I do not know, nor even suspect any; but in other cases it is plain, that the amount of the estate must be taken either from the administrator, or from the prosecuting creditor, or both. Now against either, or both together, I enter a solemn protest, in behalf of the rights of honest creditors and next of kin. It ought not to be taken either upon the word or faith of an administrator, who has neglected his duty, set his bond at defiance, trodden under foot his vows, and having wasted or squandered the estate, is deeply interested to disguise the amount of what he is accountable for, and make it as small as possible. To trust this matter to the prosecuting creditor is nearly as objectionable. Being privy to his own debt, he may be presumed to know that. But it may not exceed five dollars. He may be the most ignorant man, for business, among all the creditors, and know least about the affairs of the intestate. It is not supposable that he will fling away his time, and double the amount of his debt, in hunting evidence for the benefit of creditors and next of kin, who though deeply interested, are absent, not knowing of his labors; and if they did, might not prize them, but see them with distrust. How easily might an administrator, who had wasted a great estate, *hire* the smallest, and most corrupt man that was to be found among the petty creditors, to apply for the prosecution of the bond, and under his unblessed auspices get the amount so cut down, that creditors and next of kin, should lose all their money. It will not do to say, that he is appointed by the ordinary; his appointment is to prosecute the bond, but by no means to compromise, compound, or settle the estate. Nor will it do to say, that there is an inventory, for in many cases none

has ever been filed, and oftener it is a *meagre* document in which there is no account of bonds, notes, or book accounts. Administrators are generally unwilling to charge such against themselves, until they receive something upon them; yet, though not in the inventory, they may constitute the most valuable part of the estate; beside-which, under a decree for sale of lands, the administrator may get the whole real estate into his hands, and not a cent of it appear in the inventory. Now, what possible means have we of ascertaining the true account of the intestate's estate, in a collateral action upon the bond, when the Orphans' Court often find themselves barely able to effect it, upon a direct inquiry, though they can put the administrator (which we have no power to do) on his corporal oath, and moreover have the assistance of all the next of *kin*, to the intestate who knew his affairs, and of all the *creditors* who had relations with him in business. I think it is demonstrated therefore, that this court, in this action, does not possess *the means* of assessing damages on the plan proposed.

But if we preserved the means, I hold that it would be unlawful to give damages in every case to the amount of the *whole estate.* If we make any assignment, it must be such *just* and *righteous* damages, as the ordinary is able to prove. Suppose the whole estate was $10,000, and the administrator had paid out $9,900 to creditors and next of kin, in just and legal priority, and only the inconsiderable sum of one hundred dollars lay back in his hands; could a judge conscientiously charge a jury to give ten thousand dollars of definite damages against the administrator, because there was one hundred that by some accident or delay remained unadministered? Or if he could, might he not expect some trouble in forcing the consciences of twelve honest men, acting under oath, into such a verdict! But if these difficulties were surmounted, at what an awful remove would the verdict stand from that mild, just and righteous assessment, that the ordinary would have directed to be

made in the Orphans' Court, where the settlement of the estates of intestates lawfully·belongs?   Moreover, it is too evident to be concealed, that such a verdict would not be an assessment of damages, though falsely so called; it would be a penalty after all; a penalty *in lieu of damages;* one penalty in lieu of another; and under the most dangerous disguise.   It will be in the legal form, and have all the appearance on record of real, liquidated damages, so· as to preclude the ordinary from doing the same, as certainly there cannot be two assessments on one bond; nor would he venture to depart from what is done in this court upon the verdict of a jury, nor to give an appeal from their verdict to the Orphans' Court.  He would decree the whole $10,000 first to the payment of creditors, and *all the residue* he would divide among the next of kin.  And this terrible destruction, would fall on the administrator's head, from our attempt to do what was never done before, and according to my understanding of the statute we have no right to do.   I am therefore of opinion, according to the established course, that this court ought to do no more than render judgment for the penalty with costs.  Let the administrator petition the ordinary for a stay of execution, or stay of sale, for such reasonable further time as may enable him to settle the estate in the Orphans' Court, in satisfaction of the bond and judgment.

*Drake* concurred.

Ch. Justice, said, that if the question was *res integra,* he should think that the assessment might be made at law, but under the case of the *Ordinary* v. *Robinson,* 1 *Hals.* 195, the question was decided after two arguments, and acquiesced in, and upon the authority of that decision, he united in the opinion delivered.

Judgment for the penalty of the bond.